# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Daniel C., | Case No. 18-cv-2695 (TNL) |
| Plaintiff, | |
| v. | **ORDER** |
| Andrew M. Saul, *Commissioner of Social Security*,[1] | |
| Defendant. | |

Karl E. Osterhout, Osterhout Disability Law, LLC, 521 Cedar Way, Suite 200, Oakmont, PA 15139, and Edward C. Olson, Disability Attorneys of Minnesota, 331 Second Avenue South, Suite 420, Minneapolis, MN 55401 (for Plaintiff); and

Kizuwanda Curtis, Assistant Regional Counsel, Social Security Administration, 1301 Young Street, Suite A702, Dallas TX 75202 (for Defendant).

Plaintiff Daniel C. brings the present action, contesting Defendant Commissioner of Social Security's denial of his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–34. The parties filed cross-motions for summary judgment and consented to a final judgment from a magistrate judge pursuant to 28 U.S.C. § 636(c) and D. Minn. LR 7.2. For the reasons set forth below, the Court grants Plaintiff's motion, denies Defendant's motion, and remands this matter for further consideration.

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Andrew Saul substitutes Nancy A. Berryhill as Defendant.

## I.  BACKGROUND

### A.  Procedural History

Plaintiff initiated his claim on August 27, 2015, alleging a disability onset date of March 3, 2015. Plaintiff alleges impairments of major depressive disorder, anxiety with panic attacks, short-term memory loss, high cholesterol, and shortness of breath. Plaintiff was found not disabled and that finding was affirmed upon reconsideration. Plaintiff requested a hearing before an Administrative Law Judge. A hearing was held and, on February 7, 2018, the ALJ issued a decision denying Plaintiff's claim for benefits. Plaintiff sought review of the ALJ's decision through the Appeals Council, which denied review. Plaintiff now seeks review in this Court.

### B.  The ALJ's Decision

The ALJ found Plaintiff meets the insured status requirements through December 31, 2019. (Tr. 14). Through the date last insured, the ALJ found Plaintiff had the severe impairments of memory disorder, generalized anxiety disorder, depressive disorder, and obstructive sleep apnea. (Tr. 14). The ALJ next concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listing in 20 C.F.R. pt. 404, subpt. P, app. 1. (Tr. 15). The ALJ looked at Listings 12.02 (neurocognitive disorders), 12.04 (anxiety and obsessive-compulsive disorders), and 12.06 (anxiety and obsessive-compulsive disorders). (Tr. 15–16). The ALJ determined Plaintiff has the residual functioning capacity ("RFC") to perform a full range of work at all exertional levels with the following nonexertional limitations: "limited to simple, routine, and repetitive tasks involving only simple work-related decisions with few, if

any, workplace changes. The claimant's work should consist of quota-based tasks (as opposed to strict production requirements). The claimant should have no more than occasional contact with coworkers, supervisors, and the public." (Tr. 16). While Plaintiff could not perform his past work, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform when considering his age, education, work experience, and RFC. (Tr. 23). Accordingly, Plaintiff was found not disabled from March 3, 2015 through the date of decision. (Tr. 24).

## II. ANALYSIS

### A. Legal Standard

Disability benefits are available to individuals determined disabled. 42 U.S.C. § 423(a)(1); *accord* 20 C.F.R. § 404.315. An individual is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). This standard is met when a severe physical or mental impairment, or impairments, renders the individual unable to do his previous work or "any other kind of substantial gainful work which exists in the national economy" when taking into account his age, education, and work experience. 42 U.S.C.§§ 423(d)(2)(A); *see also* 20 C.F.R. § 404.1505(a). Disability is determined according to a five-step, sequential evaluation process. 20 C.F.R. § 404.1520(a)(4).

> To determine disability, the ALJ follows the familiar five-step process, considering whether: (1) the claimant was employed; (2) she was severely impaired; (3) her impairment was, or was comparable to, a listed impairment; (4) she could perform past relevant work; and if not, (5) whether she could perform any other kind of work.

*Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). In general, the burden of proving the existence of disability lies with the claimant. 20 C.F.R. § 404.1512(a); *Thomas v. Sullivan*, 928 F.2d 255, 260 (8th Cir. 1991).

If "substantial evidence" supports the findings of the Commissioner, then these findings are conclusive. 42 U.S.C. § 405(g). The Court's review of the Commissioner's final decision is deferential because the decision is reviewed "only to ensure that it is supported by substantial evidence in the record as a whole." *Hensley v. Barnhart*, 352 F.3d 353, 355 (8th Cir. 2003). The Court's task is "simply to review the record for legal error and to ensure that the factual findings are supported by substantial evidence." *Id.* This Court must "consider evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Burnside v. Apfel*, 223 F.3d 840, 843 (8th Cir. 2000). A court cannot reweigh the evidence or "reverse the Commissioner's decision merely because substantial evidence would have supported an opposite conclusion or merely because [a court] would have decided the case differently." *Harwood v. Apfel*, 186 F.3d 1039, 1042 (8th Cir. 1999).

Plaintiff asserts the ALJ erred in weighing the June 2016 and October 2016 opinions of neurologist Dr. Kenneth B. Hoj and the June 2016 opinion of therapist Eric Trudell. Under 20 C.F.R. § 404.1527(c), medical opinions from treating sources are

weighed using several factors: (1) the examining relationship; (2) the treatment relationship, such as the (i) length of the treatment relationship and frequency of examination and the (ii) nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors.

If a treating source's medical opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," it is given controlling weight. 20 C.F.R. § 404.1527(c)(2). Treating sources are defined as licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. § 404.1513(a). A "treating physician's own inconsistency may . . . undermine his opinion and diminish or eliminate the weight given his opinions." *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)).

## B. The Opinions of Dr. Hoj and Trudell

### 1. Dr. Hoj

Dr. Hoj completed a medical source statement on June 10, 2016. (Tr. 833–40). Dr. Hoj noted Plaintiff's medical diagnosis was memory loss and depression and he had been treating Plaintiff since April 10, 2015. (Tr. 833, 837). Dr. Hoj did not identify any clinical findings or objective signs of the condition diagnosed. (Tr. 833). Dr. Hoj provided no opinion as to whether Plaintiff's ailments or medication interfered with his attention and concentration. (Tr. 833). Dr. Hoj rated Plaintiff as incapable of tolerating low stress work. (Tr. 834). In his opinion, Plaintiff's symptoms would interfere to the extent Plaintiff

would be unable to maintain persistence and pace for competitive employment. (Tr. 834). Dr. Hoj also opined Plaintiff was incapable of part-time competitive work. (Tr. 834). Dr. Hoj indicated Plaintiff may need to lie down in the workday if stressed out. (Tr. 836). Dr. Hoj found it "difficult to answer" the amount of days Plaintiff might miss from work per month due to symptoms because he felt Plaintiff "would have difficulty" with making quick decisions and multitasking. (Tr. 836). Plaintiff would experience fatigue that would moderately impair his ability to work. (Tr. 836). Dr. Hoj opined Plaintiff would not need any extra breaks or rest periods in the workday. (Tr. 836). Plaintiff's depression moderately impacted his ability to perform activities of daily living, ability to maintain social functioning, and ability to maintain concentration, persistence, or pace. (Tr. 837). Dr. Hoj did not state whether Plaintiff experienced episodes of decompensation but nonetheless indicated they occurred on a "seldom" basis, meaning once or twice per year lasting for two weeks. (Tr. 838). Dr. Hoj did not rate Plaintiff's ability to understand, remember, and carry out simple job instructions, but rated it as poor or no ability as to detailed or complex job instructions. (Tr. 838). Dr. Hoj opined Plaintiff had fair ability to deal with coworkers, supervisors, and the public in an employment setting, fair ability to tolerate normal routine supervision associated with competitive work, including accepting instructions and criticism, and poor or no ability to deal with changes in a routine work setting. (Tr. 838). Dr. Hoj indicated Plaintiff had a fair ability to make basic decisions and exercise proper judgment in a work setting; sustain an ordinary routine without special supervision; work with or near others without being distracted; and perform activities within a schedule, be punctual, and adhere to basic work-place

standards. (Tr. 839). Dr. Hoj rated Plaintiff as having poor or no ability to maintain attention and concentration for a two-hour segment and complete a normal workday or work week without interruptions from psychological symptoms. (Tr. 839). Finally, Dr. Hoj rated Plaintiff as having a good ability to maintain socially appropriate behavior. (Tr. 839).

Dr. Hoj completed a statement of disability form on October 7, 2016. (Tr. 439–40). Dr. Hoj noted Plaintiff was diagnosed with memory loss that had been shown via neuropsychometric testing. (Tr. 439). Dr. Hoj noted he sees Plaintiff every six months. (Tr. 439). Dr. Hoj indicated he does not treat Plaintiff's depression, anxiety, or chemical dependency. (Tr. 440). Dr. Hoj noted Plaintiff has "not changed" under his care. (Tr. 440). Dr. Hoj opined Plaintiff was not released to return to work and would never return to work. (Tr. 440). Dr. Hoj noted no physical barriers to return to work and further noted that any rating of the degree of Plaintiff's mental impairments would have "to be through [a] psychiatrist." (Tr. 440). Dr. Hoj believed Plaintiff was competent to endorse checks and use the proceeds. (Tr. 440).

For Dr. Hoj's October 2016 opinion, the ALJ found it to be of "little probative value given its limited scope and purpose." (Tr. 21). But the ALJ noted that Dr. Hoj's opinion that Plaintiff was not released to work was supported by his prior treatment notes wherein he opined that Plaintiff would not be able to perform the demands of his past job due to limited capacity for significant multitasking. (Tr. 21). The ALJ also noted that Dr. Hoj's opinion that Plaintiff does not require physical work restrictions is consistent with the longitudinal medical record. (Tr. 21).

With respect to Dr. Hoj's June 2016 opinion, the ALJ gave it limited weight because the "degree of functional limitations he proposes are unsupported by the evidentiary record." (Tr. 21). The ALJ noted that Dr. Hoj's June 2016 opinion was inconsistent with his October 2016 opinion, with the former reporting physical restrictions and the latter reporting none. (Tr. 21). The ALJ also contrasted Dr. Hoj's opined limitations with Plaintiff's activities, other medical records, and Dr. Hoj's treatment notes. (Tr. 21). The ALJ concluded that these considerations "coupled with the relative stability of symptomology" do not support Dr. Hoj's conclusions regarding Plaintiff's ability to perform low stress jobs, deal with changes in work setting, or maintain persistence and pace necessary to engage in competitive employment. (Tr. 21–22).

### 2.  Trudell

Trudell completed a mental medical source statement on June 18, 2016. (Tr. 429–38). Trudell noted Plaintiff's diagnosis as major depressive disorder, severe; generalized anxiety disorder, severe; and unspecified cognitive difficulties. (Tr. 429). Trudell had been treating Plaintiff since March 14, 2015. (Tr. 429). Trudell's prognosis was that Plaintiff continues to exhibit symptoms of major depressive disorder and generalized anxiety disorder, he shows some improvement with depression but no improvement or little improvement for cognitive struggles. (Tr. 429). Trudell noted Plaintiff responds well to therapy, actively engaging and participating on a regular basis. (Tr. 429). Trudell indicated Plaintiff had, in relation to his unspecified cognitive disorder, medically documented findings in memory impairment, disturbance in mood, and emotional lability

and impulse control. (Tr. 429). As for affective disorders, Trudell noted Plaintiff had medically documented findings in appetite disturbance with change in weight, sleep disturbance, decreased energy, feelings of guilt or worthlessness, and difficulty concentrating or thinking. (Tr. 430). Trudell did not know if Plaintiff had any intellectual disability but was not functioning below an IQ of 70. (Tr. 431). With respect to Plaintiff's anxiety disorder, which Trudell indicated was secondary to Plaintiff's depressive disorder and cognitive difficulties, Plaintiff had generalized persistent anxiety accompanied by recurrent severe panic attacks. (Tr. 431). Plaintiff did not have symptoms resulting in a complete inability to function independently outside the home. (Tr. 431). Plaintiff did not have schizophrenic, paranoid, or other psychotic disorders, somatoform disorders, personality disorders, or autistic or other pervasive development disorders. (Tr. 430–33).

Trudell opined that Plaintiff suffers fatigue from his conditions to a moderate degree. (Tr. 433). Plaintiff could tolerate low amounts of stress in an employment setting. (Tr. 433). Trudell noted Plaintiff was diagnosed with chemical dependency, but it was eight months in remission. (Tr. 434–35). Trudell opined the effects of Plaintiff's chemical dependency could be separated from the effects of his other impairments; Trudell further noted Plaintiff had no current chemical dependency symptoms. (Tr. 434).

Regarding Plaintiff's abilities, Trudell rated Plaintiff as fair to poor in ability to understand, remember, and carry out simple or detailed job instructions and ability to deal with changes in a routine work setting. (Tr. 435–36). Plaintiff had poor ability to understand, remember, and carry out complex job instructions and complete a normal workday or work week without interruptions from psychologically based symptoms.

(Tr. 436). Trudell opined Plaintiff had fair ability to make basic decisions and exercise proper judgment in a work setting. (Tr. 436). Trudell rated Plaintiff as having a good ability to maintain socially appropriate behavior. (Tr. 437). Trudell indicated it was "unknown" as to Plaintiff's ability to deal with coworkers, supervisors, and the public in an employment setting; tolerate normal routine supervision associated with competitive work, including accepting instructions and criticism; maintain attention and concentration for a two hour segment; sustain an ordinary routine without special supervision; work with or near others without being distracted by them; and perform activities within a schedule, be punctual, and adhere to basic work-place standards. (Tr. 436–37). Trudell could not estimate how many days per month Plaintiff might miss work due to his psychological ailments. (Tr. 437). Trudell did not know if Plaintiff could handle funds in his best interests. (Tr. 437). Trudell added that Plaintiff's cognitive difficulties "appear to exacerbate mental health symptoms along with forgetting routine daily activities impairing his daily functioning." (Tr. 437). Plaintiff "struggle[s] with memory and simple memory" and frustrations around his cognitive abilities exacerbate his mental health symptoms. (Tr. 438).

The ALJ noted Trudell was not an acceptable medical source who could provide a medical opinion on the issue of disability. (Tr. 20).[2] The ALJ further noted that Trudell's

---

[2] The Court agrees that Trudell is not an "acceptable medical source" but instead an "other source" that the ALJ *may* use as evidence to show the severity of Plaintiff's impairments. 20 C.F.R. § 404.1513(d)(1); *Lacroix v. Barnhart*, 465 F.3d 881, 886 (8th Cir. 2006). "In determining what weight to give 'other medical evidence,' the ALJ has more discretion and is permitted to consider any inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005); *Tindell v. Barnhart*, 444 F.3d 1002, 1005 (8th Cir. 2006). The ALJ was not required to go through a rigid recitation of the factors found

observations regarding the deleterious effects of extreme stress and persistence of the claimant's memory impairment are consistent with other medical evidence, . . . the degree of function loss he proposes is unsupported by clinical signs demonstrating the claimant's relatively stable mental status and capacity to engage in a variety of daily activities requiring at least some degree of persistence and decision-making such as driving, shopping, cooking, and routine household chores.

(Tr. 20–21).

### C. The Medical Record

Not only did the ALJ reject Dr. Hoj and Trudell's opinions, the ALJ also rejected the opinions of the state psychological consultant, finding that the consultant's opined limitations were not restrictive enough. (Tr. 22). In rejecting all opinions, the ALJ was left with zero opinions from medical providers—examining or consulting—on which to craft his RFC determination. Certainly, it is true that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence," *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000), but the "RFC is a medical question, and an ALJ's finding must be supported by some medical evidence," *Guilliams v. Barnhart*, 393 F.3d 798, 803 (8th Cir. 2005). Here, the ALJ injected his own opinion to fill the void left by rejecting every medical opinion. *See Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005).

The medical record in this case contains lengthy treatment records of Plaintiff's depression and anxiety that, as is typical in pharmacological treatment of mental disorders, wax and wane in effectiveness until an appropriate combination of medications

---

at 20 C.F.R. § 404.1527(c) when weighing Trudell's opinion. Nor was the ALJ required to assign a particular weight to Trudell's opinion given his status as an other source.

is achieved—and even then the medication regimen does not necessarily remain static. But regardless of the status of Plaintiff's depression and anxiety throughout treatment, his memory ailments remain in existence and unimproved. The ALJ, however, merely pointed to the final medical record from Dr. Hoj that noted an improvement in memory functioning following a new prescription, the fact that no further records indicate additional decline, and previous stability of symptomology to toss out wholesale Dr. Hoj's opinion. This rejection, and the related rejection of Trudell's opinion, is not supported by the medical record as a whole. To reach this conclusion, the Court finds it important to recount the longitudinal medical record.

### 1. Pharmacological Treatment

Plaintiff was receiving various treatment for depression and anxiety before the onset of his current ailments, but relevant here is Plaintiff saw Dr. Matthew Monteiro on January 26, 2015, complaining of panic attacks twice weekly due to high stress at work. (Tr. 316–18). Dr. Monteiro recommended therapy and altered Plaintiff's medication regimen. (Tr. 318). Plaintiff then saw Dr. Cynthia Frane on February 6, 2015 requesting to start depression medication. (Tr. 312–15). Dr. Frane changed Plaintiff's medication regimen. (Tr. 314–15). On February 27, 2015, Dr. Frane found Plaintiff's anxiety to be stable and discontinued his sleeping medications. (Tr. 310). Plaintiff saw Dr. Frane on March 2, 2015. (Tr. 303–07). He reported getting worse; wanting to sleep all the time, not going to work. (Tr. 303). Plaintiff reported word-finding difficulties and a lack of interest in going to work on Mondays. (Tr. 303).

Plaintiff went to the emergency room for an anxiety evaluation on March 3, 2015. (Tr. 323–31, 361–64). Plaintiff reported anxiety increasing over the last 4-6 weeks with accompanying memory and personality changes. (Tr. 323, 361–64). Plaintiff had to report to the emergency room because his anxiety had prevented him from getting an MRI. (Tr. 323, 307, 361–64). On examination Plaintiff was tremulous and anxious. (Tr. 325, 361–64). Plaintiff had a normal neurologic exam, CT imaging that revealed no acute intracranial process, and normal vital signs, so he was discharged. (Tr. 325. 338–39, 361–64).

Plaintiff saw Dr. Zohreh Mahdavi on March 4, 2015 for a neurologic evaluation. (Tr. 358–60). Plaintiff, through his wife and daughter, reported issues with depression and anxiety ongoing for six to eight weeks. (Tr. 358). Dr. Mahdavi noted that Plaintiff "himself does not provide much in the way of history, although he answers questions when directly asked." (Tr. 358, 359). Dr. Mahdavi obtained Plaintiff's symptoms mostly from his wife. (*See* Tr. 358). On examination, Plaintiff was alert and cooperative, had flat affect, responded appropriately but slowly, and speech was clear. (Tr. 359). Plaintiff was tremulous but demonstrated normal fine finger movements. (Tr. 359). Dr. Mahdavi's impression was uncontrolled depression and anxiety that needed a formal psychiatric evaluation, and that the cognitive issues were entirely related to depression but he did not rule out the possibility of a separate neurologic issue requiring an MRI for further analysis. (Tr. 359).

Plaintiff saw Dr. Frane on March 13, 2015 for completion of FMLA paperwork. (Tr. 298–300). Dr. Frane adjusted Plaintiff's medication to address anxiety issues and

anticipated an improvement in Plaintiff's sleep with an improvement in anxiety. (Tr. 300).

Plaintiff saw psychiatrist Dr. Pator Colón on March 13, 2015 for an intake evaluation. (Tr. 341–42). Plaintiff reported increased anxiety one year prior that was treated with medication, then increased anxiety two months prior that led to another prescription. (Tr. 341). Plaintiff reported depressed mood with low motivation, concentration, and energy. (Tr. 341). On examination Plaintiff's psychomotor activity was within normal limits, there was no tangentiality or loose associations, his mood was down, his affect was euthymic, and his memory was intact. (Tr. 341). Dr. Colón diagnosed generalized anxiety disorder. (Tr. 341). Dr. Colón adjusted Plaintiff's medication regimen, increasing his Buspirone dosage, continuing his abilify and paroxetine, and trazodone, and prescribing alprazolam. (Tr. 342).

Dr. Donald Wiger conducted a neuropsychometric assessment of Plaintiff on March 26, 2015. (Tr. 262–66). Plaintiff's wife reported Plaintiff had some panic attacks since January 2015 and had begun drinking again after being sober from alcohol for 18 years. (Tr. 262). She also reported significant concerns with Plaintiff's concentration and planning abilities. (Tr. 262). Plaintiff reported difficulties with anxiety and memory, mainly for the past three or four months, attributing it to pressure at work. (Tr. 262–63). Plaintiff reported getting along with coworkers, but no longer liking his job and wishing to retire. (Tr. 263). Dr. Wiger summarized his testing by noting Plaintiff had memory deficits attributed to cognitive changes in functioning from anxiety and depression brought on by work stressors. (Tr. 266).

Plaintiff saw Dr. Frane on March 30, 2015. (Tr. 294–97). Plaintiff reported having good days and bad days, rated at 6/10 and 3/10, respectively. (Tr. 296). Plaintiff reported a constant tremor, varying in intensity, mostly in his hands but sometimes in his legs if he has to stand still. (Tr. 296). MRI imaging that same day showed evidence for acute intracranial process; no mass, hemorrhage, or recent infarct; lateral and third ventricles at the upper limits of expected size, but without evidence for frank hydrocephalus or aqueductal obstruction; and minor age-related changes. (Tr. 332).

Plaintiff saw Dr. Colón on April 10, 2015. (Tr. 343–44). Plaintiff reported stable mood with good energy, motivation, and concentration. (Tr. 343). Plaintiff's anxiety was reduced and more manageable so he started taking less alprazolam. (Tr. 343). Plaintiff reported his irritability was under control, but he had poor sleep. (Tr. 343). On examination Plaintiff's psychomotor activity was within normal limits, there was no tangentiality or loose associations, his mood was stable, his affect was euthymic, and his memory was intact. (Tr. 343). Dr. Colón increased the trazodone for sleep. (Tr. 343).

Plaintiff saw Dr. Hoj on April 10, 2015. (Tr. 268–72, 35657). Dr. Hoj went over the results of Plaintiff's various recent testing, noting his impression was amnestic disorder of uncertain cause with depression and anxiety features secondary to changes in functioning. (Tr. 356). Plaintiff was quite anxious and agitated. (Tr. 356). Plaintiff reported his anxiety and depression were much better. (Tr. 356). Plaintiff's wife reported that Plaintiff's cognition was better. (Tr. 356). Dr. Hoj's impression was memory difficulties that had improved with some changes to Plaintiff's psychiatric medications.

(Tr. 357). Dr. Hoj discussed avoidance of multitasking, writing down to-do lists, and completing tasks. (Tr. 357, 271).

Plaintiff saw Dr. Frane on April 13, 2015. (Tr. 291–93). Plaintiff was continuing to increase his activity, with decreases in his anxiety and depression. (Tr. 291). Plaintiff saw Dr. Frane on April 27, 2015. (Tr. 287–90). Plaintiff reported his anxiety was mild to moderate. (Tr. 287). Plaintiff complained of memory problems and confusion, noting he had an upcoming neurologist appointment for reassessment of his symptoms. (Tr. 287). Dr. Frane found Plaintiff to be "doing much better" overall, having made adjustments based on psychiatrist recommendations. (Tr. 289).

Plaintiff saw Dr. Hoj on May 18, 2015. (Tr. 273–76, 354–55). Plaintiff reported continued improvement but he was a "little bit down recently." (Tr. 354). Plaintiff indicated he was doing better and felt "he is going to be able to return to his employment as a production manager." (Tr. 354). Neuropsych testing showed no change in short-term memory, "rais[ing] concerns for returning back to current work situation." (Tr. 276, 354). However, Dr. Hoj noted a "[r]eturn to work could be attempted, if done in a proctored fashion, to see if [Plaintiff] can do the work satisfactorially [sic]." (Tr. 276, 354). Plaintiff was to check with his employer to see if this was possible. (Tr. 276, 355). Dr. Hoj saw Plaintiff again on May 29, 2015. (Tr. 353). Plaintiff was unable to secure a proctored work situation. (Tr. 353). In looking at Plaintiff's job description, Dr. Hoj had concerns Plaintiff could complete it given his significant memory impairment. (Tr. 353).

Plaintiff saw Dr. Colón on June 12, 2015. (Tr. 345–46). Dr. Colón included a history of Plaintiff's telephone calls since his last appointment: Two weeks after his last

appointment Plaintiff reported his mood was down so his abilify was increased; one month ago Plaintiff reported he was oversleeping so his trazodone was decreased; and three weeks ago Plaintiff reported his mood was depressed so his paroxetine was increased. (Tr. 345). Plaintiff reported his mood was depressed; he had low energy, motivation, and concentration; and was experiencing anxiety. (Tr. 345). Plaintiff reported his irritability was under control for the most part, but he was tending to oversleep. (Tr. 345). On examination Plaintiff's psychomotor activity was within normal limits; there was no tangentiality or loose associations; his mood was down; his affect was blunted; and his memory was intact. (Tr. 345). Dr. Colón added major depression – recurrent to Plaintiff's diagnoses. (Tr. 345). Dr. Colón lowered Plaintiff's paroxetine dosage and prescribed bupropion. (Tr. 345).

Plaintiff saw Dr. Hoj on August 3, 2015. (Tr. 351–52). Plaintiff went on vacation the week prior and "did much better and felt much better." (Tr. 351). Plaintiff reported his depression was doing better but he "still does have some significant issues." (Tr. 351). Plaintiff felt his coordination was off but it looked "quite good" on examination. (Tr. 351).

Plaintiff saw Dr. Frane on August 12, 2015. (Tr. 282–86). Plaintiff reported low energy level and sleeping well. (Tr. 282). On examination, Plaintiff was slightly anxious but otherwise alert and oriented. (Tr. 285). Plaintiff reported "Dr. Hoj will have him on long-term disability as of September – he is getting back into golf, doing more fishing," and he was losing weight due to being more physically active and lower appetite. (Tr. 286).

Plaintiff saw Dr. Colón on August 14, 2015. (Tr. 347–48). Between sessions, Plaintiff called to report his mood was still down and Dr. Colón increased his bupropion, but Plaintiff indicated it resulted in headaches and stomachaches so the dosage was returned to its previous amount. (Tr. 347). Plaintiff reported anxiety and depressed mood with low energy and motivation, and poor concentration. (Tr. 347). Plaintiff reported irritability was under control and he was sleeping well. (Tr. 347). On examination Plaintiff's psychomotor activity was within normal limits, there was no tangentiality or loose associations, his mood was down, his affect was euthymic, and his memory was intact. (Tr. 347).

Plaintiff saw Dr. Hoj on September 4, 2015. (Tr. 277–81, 349–50). Plaintiff reported worsening headaches, stuttering problems, and worsening memory. (Tr. 349). Dr. Hoj's impression was that Plaintiff's memory difficulties were caused by past alcoholism and present depression. (Tr. 349). Plaintiff was to undergo an MRI. (Tr. 280, 349–50).

Plaintiff saw Dr. Colón on January 8, 2016. (Tr. 719–20). Plaintiff reported depressed mood, low energy, low motivation, poor concentration, anxiety, and some irritability. (Tr. 719). Dr. Colón prescribed duloxetine and increased Plaintiff's trazodone dosage. (Tr. 719).

Plaintiff saw Dr. Hoj on April 1, 2016. (Tr. 452–53). Dr. Hoj noted "significant improvement" in Plaintiff's depression and anxiety since he last saw him; Plaintiff was getting occasional anxiety attacks, but "memory continues to be of concern." (Tr. 452). Plaintiff reported not being able to remember some of his grandchildren's names and

occasional word-finding problems. (Tr. 452). On examination, Plaintiff had a SLUMS mental status score of 22/30 which is consistent with cognitive impairment. (Tr. 452). Dr. Hoj noted his previous SLUMS score was 21/30 and his best was 25/30. (Tr. 452). Dr. Hoj's impression was persistent memory difficulties. (Tr. 452). Dr. Hoj noted Plaintiff's history of heavy alcohol use in the past "clearly could have contributed to his memory problems, and his memory is very similar to what it was six to seven months ago" despite improvement of depression and anxiety. (Tr. 452). Dr. Hoj noted: "I do not think that he can return to a competitive work situation at this time." (Tr. 452).

Plaintiff saw Dr. Colón on April 8, 2016. (Tr. 717–18). Plaintiff reported more stable mood, good energy, good motivation, good concentration, and anxiety under control. (Tr. 717). Dr. Colón discontinued duloxetine and reduced the abilify dosage with the goal of discontinuing it. (Tr. 717).

Dr. Hoj treated Plaintiff of June 9, 2016. (Tr. 450–51). Plaintiff reported continued difficulties with depression and memory difficulties, including leaving his keys in his car, forgetting his credit card at a store, and forgetting simple occurrences. (Tr. 450). In discussing disability forms, Dr. Hoj noted his major concerns in limitation is related to Plaintiff's "memory difficulties from his work situation that he had been in, and I do not think that he would be able to make quick decisions and to do any multitasking." (Tr. 450). On examination, Plaintiff's SLUMS mental status score was 23/30. (Tr. 450). Dr. Hoj's impression remained that Plaintiff suffered from persistent memory loss problems with likely contribution from excessive alcohol use as well as depression and anxiety impairing day-to-day function. (Tr. 450). Dr. Hoj did not believe Plaintiff could

return to his prior work because he could not perform the required multitasking and frequent quick decisions. (Tr. 450).

Plaintiff saw Dr. Colón on July 8, 2016. (Tr. 716). Plaintiff reported depressed mood, low energy, low motivation, low concentration, and anxiety. (Tr. 716). Dr. Colón prescribed bupropion and discontinued abilify. (Tr. 716). Plaintiff saw Dr. Colón again on August 5, 2016. (Tr. 715). Plaintiff reported depressed mood with low energy, low motivation, low concentration, and increased anxiety. (Tr. 715). Dr. Colón increased Plaintiff's bupropion and trazodone dosages. (Tr. 715).

Plaintiff had a follow-up with Dr. Colón on August 26, 2016. (Tr. 713–14). Plaintiff reported more stable mood with better energy and motivation, but there was much anxiety that interfered with concentration. (Tr. 713). Dr. Colón increased Plaintiff's buspirone dosage and started naltrexone for Plaintiff's alcohol cravings. (Tr. 713). And Plaintiff saw Dr. Colón on September 23, 2016, where he reported stable mood, energy that was up and down but acceptable, good motivation, and concentration that was somewhat down but manageable. (Tr. 711). Plaintiff also reported his anxiety was more manageable under an increased dosage of buspirone. (Tr. 711).

Plaintiff saw Dr. Hoj on October 7, 2016. (Tr. 448–49). Plaintiff reported good and bad days with his depression, anxiety, and memory. (Tr. 448). On a good day with respect to memory, Plaintiff "may remember what has gone on for a couple of days before and on a bad day he cannot remember what has gone on the day before." (Tr. 448). There was "no correlation between his memory difficulties and when his depression and anxiety are worse." (Tr. 448). On examination Plaintiff had a SLUMS mental status score

of 20/30. (Tr. 449). Dr. Hoj noted Plaintiff's memory was slightly worse than his previous visit. (Tr. 449). Plaintiff's "general fund of knowledge seems to be fairly good, but clearly his short-term memory is impaired, which is likely a result of his alcohol. His depression and anxiety may be contributing as well." (Tr. 449).

Plaintiff saw Dr. Colón on December 16, 2016. (Tr. 709–10). Plaintiff reported a drop in mood, less energy, less motivation, reduced concentration, and increased anxiety. (Tr. 709). Dr. Colón prescribed fluvoxamine to improve Plaintiff's mood and increased his alprazolam dosage to treat anxiety. (Tr. 709).

Plaintiff saw Dr. Gretchen Grandgenett on February 10, 2017 for a follow-up related to nausea and vomiting. (Tr. 562–65). Relevant here, Plaintiff reported issues with memory loss that included forgetting to turn stove burners off, forgetting where he put the phone, locking his keys in the car, and forgetting his credit card at a store. (Tr. 562).

Dr. Hoj saw Plaintiff on April 21, 2017. (Tr. 445–47). Plaintiff reported no improvement to his memory and continued anxiety and depression problems that can be severe one or two days monthly. (Tr. 445). On examination, Plaintiff's SLUMS mental status score was 18/30. (Tr. 446). Dr. Hoj noted Plaintiff's memory loss was slightly worse than his previous appointment. (Tr. 446). Dr. Hoj prescribed donepezil, a cholinesterase inhibitor that may slow down progression of memory difficulties. (Tr. 446). Dr. Hoj discussed the importance of alcohol abstinence as well as continued depression and anxiety treatment in also slowing down memory degradation. (Tr. 446).

Plaintiff saw Dr. Hoj on June 5, 2017. (Tr. 441–44). Plaintiff felt "a little bit slower thinking wise" while on the donepezil. (Tr. 441). On Examination, Plaintiff's

SLUMS mental status score was 26/30. (Tr. 442). While Plaintiff felt cloudier on his thinking while taking donepezil, Dr. Hoj decided to continue the prescription given Plaintiff's improved SLUMS memory testing. (Tr. 442).

### 2. Therapeutic Treatment

Besides the above-detailed pharmacological treatment of his symptomology, Plaintiff saw therapist Eric Trudell on February 28, 2015 for a diagnostic assessment. (Tr. 368–70). Plaintiff reported depressive and anxiety symptoms "directly related to his work and personal life." (Tr. 368). On examination, Plaintiff's mood was depressed; his affect was appropriate; he was fully oriented; his immediate and remote memory were intact; his overall mental functioning was accurate (except he was only mostly accurate on his serial sevens); his judgment was impulsive; and his insight was limited. (Tr. 368). Trudell's diagnosis was: major depressive disorder, recurrent; and generalized anxiety disorder. (Tr. 369).

Trudell created an individual treatment plan with Plaintiff to address his depression and anxiety, including long-term and short-term goals and related therapeutic interventions and skills training. (Tr. 371–73). Plaintiff then had 130 therapy sessions with Trudell from March 7, 2015 through October 28, 2017, generally on a weekly basis. (Tr. 374–413, 454–556). Generally, Plaintiff and Trudell processed Plaintiff's previous week, including any anxiety or depression symptoms.

Trudell noted Plaintiff's ability to utilize concepts learned through therapy. For example, On August 1, 2015, Plaintiff did a "nice job using his breathing exercises to calm himself down." (Tr. 395). The following week, on August 8, 2015, Trudell noted

Plaintiff was "starting to generalize" various skills learned in therapy into his everyday life. (Tr. 396). Trudell repeated this in July 2016 and September 2017. (Tr. 517, 460). Indeed, Plaintiff continued demonstrating such skills in February 2017 where he was able to work himself out of a panic attack without medication. (Tr. 487). In April 2016, Trudell noted Plaintiff appeared "to being fine with current medications." (Tr. 530). In October 2017, Trudell and Plaintiff "discussed his anxiety and depression which has been manageable." (Tr. 457).

Trudell also noted Plaintiff was "benefiting greatly" from chemical dependency treatment on November 2015. (Tr. 404). Plaintiff also benefitted from volunteering starting in January 2016. (Tr. 541, 539). Trudell noted in May 2016 that Plaintiff's volunteering was helping to "slow down his memory loss and gives him purpose which appears to be improving his mental health." (Tr. 527). Trudell stated in June 2017 that Plaintiff remaining active in social communities resulted in less mental health symptomology. (Tr. 471).

On several occasions Trudell described Plaintiff's difficulties with memory. On May 7, 2016, Plaintiff reported that "he could not remember his grandson's name for over an hour and that he has been forgetting to lock doors and shut off lights. He appeared frustrated by this." (Tr. 528). The following week, on May 14, 2016, Trudell noted that Plaintiff had been "journaling and taking notes to help him remember things as he has been forgetting a lot of crucial information that he needs to remember. He appears to be adjusting to his memory loss issues." (Tr. 527). Trudell noted that Plaintiff's ongoing volunteering "appears to help slow down his memory loss and gives him

purpose which appears to be improving his mental health." (Tr. 527). On July 29, 2017, Plaintiff spoke with Trudell about going to a baseball game the week prior, but Trudell noted it was "actually the week prior which we discussed last week during therapy. [Trudell] has not seen a big decrease in cognitive abilities but this is an example of his struggles with memory accuracy." (Tr. 465). The following week, on August 5, 2017, Trudell noted Plaintiff continued to "repeat things discussed the week prior" and "continues to stress about certain aspects of his memory loss." (Tr. 464). In October 2017, Trudell noted there had been no reported change in Plaintiff's memory. (Tr. 457). Finally, the Court notes that Plaintiff accurately reported his memory testing results to Trudell following appointments with Dr. Hoj in October 2016 and April 2017. (Tr. 504, 477).

### D. Plaintiff's Testimony

Plaintiff testified at the administrative hearing on January 29, 2018. (Tr. 30–55). Plaintiff testified that he felt his current treatment for anxiety and depression was helping, noting that he suffers from anxiety and depression symptoms three to five times per week but that was "a heck of a lot better than it was." (Tr. 41, 46–48). Plaintiff testified that stress causes panic attacks. (Tr. 49). Plaintiff testified as to a normal week: on Mondays he did housecleaning, cooked dinner, and exercised; Tuesdays he goes to an AA meeting, does house chores, and cooks dinner; Wednesdays he volunteers facilitating treatment recovery meetings and works around the house. (Tr. 41–42).[3] Plaintiff testified that he colors as a hobby. (Tr. 42). Plaintiff testified that he tries new recipes while cooking, but

---

[3] Plaintiff did not finish recounting his week due to ALJ questioning.

he is not permitted to use the stovetop because he occasionally forgets to turn the burners off, so he tries to use the oven. (Tr. 42–43). Plaintiff testified to trying to read books but he cannot follow them well because he "comprehend[s] terribly," having to read it three to four times. (Tr. 43). Plaintiff testified to driving up to 14 miles, but sometimes he forgets where he is going "then a few seconds later it comes back to me, but it does slip every now and then." (Tr. 44, 36). This happens once or twice per month. (Tr. 44). Plaintiff also testified that he used to be a certified auto mechanic and did all his own automotive work, but that he started putting components back together wrong on repairs so he does not work on cars anymore. (Tr. 44). Regarding other memory issues, Plaintiff testified to locking his keys in his car, leaving his wallet at the store, leaving his credit card at a store, leaving his phone at a store, remembering his grandchildren's names, and not remembering all the peoples' names at the recovery treatment meetings he facilitates. (Tr. 45).

### E. Discussion

As this medical record shows, Plaintiff had generally stable, but low SLUMS mental status scores evincing cognitive impairment: 22/30 on April 1, 2016; 23/30 on June 6, 2016; 20/30 on October 7, 2016; and 18/30 on April 21, 2017. When Dr. Hoj prescribed a new medication to impede further regression of Plaintiff's memory, he received a 26/30 SLUMS score. But Dr. Hoj noted—and the ALJ did not address—that this medication was meant only to slow down degradation, not reverse it. This medication also caused side effects previously unseen in Plaintiff's pharmacological treatment of his mental health ailments. Moreover, at the administrative hearing, Plaintiff testified to

continued, lingering memory ailments affecting the very same daily activities the ALJ used to discount his complaints of memory ailments. As such, the Court finds the ALJ's decision to reject both Dr. Hoj and Trudell's opinions as being inconsistent with the record is without substantial evidence. Accordingly, the Court remands this case for reconsideration.

One final matter bears comment. The ALJ, in examining the opinions of Dr. Hoj and Trudell, discussed them in isolation from one another and compared them solely against the medical record. Defendant, in his briefing, points out various inconsistencies between the opinions. The inconsistencies that Defendant points to are not enough, in this Court's opinion, to override their overall consistency with the medical record. Dr. Hoj and Trudell's opinions reflect their particular specialties and focuses for Plaintiff's treatment. Moreover, it is not unreasonable for both Dr. Hoj and Trudell to have considered Plaintiff's ability to return to his previous work, rather than *any* work whatsoever, when assessing him, particularly given the length of time Plaintiff worked in his previous job.[4]

---

[4] This also brings into question Plaintiff's remaining claim for error: that the ALJ failed to consider appropriately his lengthy work history. "Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted." *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998). "An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Id.*; *Roberson v. Astrue*, 481 F.3d 1020, 1025–26 (8th Cir. 2007) ("It might have been better if the ALJ had referred specifically to Ms. Roberson's work record when determining her credibility, and Ms. Roberson contends correctly that a credibility determination must be affirmatively linked to substantial evidence; but we do not think that the ALJ was required to refer to every part of the record, and we think that the portions of the record that he referred to were sufficient to support his credibility determination.") (internal citation omitted). Here, the ALJ indicated—in boilerplate language—he considered Plaintiff's work history when determining his ailments. (Tr. 17). The ALJ also referenced Plaintiff's earnings records in concluding he met the insured status requirements through December 2019, (Tr. 12, 14), and reviewed Plaintiff's past work when determining whether he could perform it considering his RFC, (Tr. 22). Because the Court finds error in consideration of medical opinions and

## III. CONCLUSION

Based upon the record, memoranda, and proceedings herein, and for the reasons stated above, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment, (ECF No. 11), is **GRANTED**, Defendant's Motion for Summary Judgment, (ECF No. 14), is **DENIED**, and the Commissioner's decision is **VACATED** as to steps four through five and this case is **REMANDED** for further proceedings consistent with this opinion.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: December 18, 2019                    *s/ Tony N. Leung*
                                           Tony N. Leung
                                           United States Magistrate Judge
                                           District of Minnesota

                                           *Daniel C. v. Saul*
                                           Case No. 18-cv-2695 (TNL)

---

remands for reconsideration beginning at Step Four, the Court need not fully address Plaintiff's argument but simply notes that Plaintiff's earnings activity for 171 quarters straight from 1973 through 2015. (Tr. 187–88), should likely be a positive factor in weighing Plaintiff's credibility just as the inverse almost always serves as a negative factor. *See* 20 C.F.R. § 404.1529(c) (2011).